The Heater Corporation v. Commissioner.
Heater Corp. v. Commissioner
Docket No. 40148.
United States Tax Court
T.C. Memo 1954-151; 1954 Tax Ct. Memo LEXIS 95; 13 T.C.M. (CCH) 867; T.C.M. (RIA) 54257; September 15, 1954, Filed Thomas V. Koykka, Esq., and Fred D. Kidder, Esq., for the petitioner. S. W. Ozark, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined deficiencies in personal holding company surtax and additions under section 291(a), Internal Revenue Code of 1939, as follows: Year ended
Deficiency
Addition
February 28, 1947
$91,683.21
$22,920.80
February 29, 1948
38,496.43
9,624.11 The issues for decision are whether amounts received by the petitioner *96 during the taxable years were royalties within the meaning of section 502(a) or capital gains from the sale of patents and, if section 502(a) applies, whether the failure to file personal holding company returns was due to reasonable cause and not to wilful neglect. The stipulation filed by the parties is adopted as the findings of fact. [Findings of Fact] The income tax returns of the petitioner were filed with the collector of internal revenue for the Eighteenth District of Ohio. The petitioner was organized under the name of The Coroaire Heater Corporation on March 6, 1940. It engaged in the business of selling gas heating equipment manufactured for it by others. The petitioner acquired three patents on or before December 29, 1943, which protected the inventions embodied in the heating units sold by it. The petitioner changed its name to The Heater Corporation on December 29, 1943, in anticipation of the organization by its stockholders of a new corporation called The Coroaire Heater Corporation, hereafter called Coroaire. The latter was organized on February 18, 1944, at which time the petitioner transferred to Coroaire all of the assets of the petitioner, except cash, *97 accounts receivable, 250 shares of Coroaire stock and the patents, in exchange for 4,250 shares of Coroaire stock. Coroaire then began to operate a business, similar to that operated by the petitioner, under a license granted by the petitioner to Coroaire to manufacture, use and sell patented heating equipment under the patents. The record does not show what the provisions of that license were. The petitioner and Coroaire entered into an agreement dated March 4, 1944, in which the petitioner was called licensor and Coroaire licensee. It recited that the petitioner was the owner of the three patents and the licensee was "desirous of acquiring the exclusive license for the United States of America to the benefits of the invention comprehended" by the patents and any improvements or additions thereto in order to engage in the manufacture and sale of the heating equipment involving the use of the patented improvements, but the parties intended to provide for the payment of interest on Coroaire debentures "before the payment of Royalties to the Licensor by the Licensee." The agreement provided, inter alia, as follows: "1. "Licensor hereby grants to the Licensee, its successors and *98 assigns, the exclusive right to make or have made, use and sell and to sublicense others to make, use and sell, subject to the terms and provisions of this agreement any and all products or devices embodying any one or more of the inventions comprehended by said Letters Patent or improvements thereon. "2. "Licensor covenants that he will grant no license to others to make or have made, use or sell the products or devices comprehended by said Letters Patent, or any improvements thereon which he may discover or acquire, during the term of this agreement. "3. "Licensee agrees to pay licensor during each year of the term hereof a royalty of Five Percent (5%) on the net sales price of the first Ten Thousand (10,000) Heating Units; a royalty of Four Percent (4%) on the net sales price of Heating Units in excess of Ten Thousand (10,000) and up to Thirty Thousand (30,000) of said Heating Units and a royalty of Three Percent (3%) on the net sales price of all Heating Units sold by the licensee in excess of Thirty Thousand (30,000) during each year of the term hereof; said royalties to be computed and paid quarterly as hereinafter provided, on the tenth (10th) day of June, September, *99 December and March. Commencing on June 10th, 1944, licensee shall pay to the licensor the royalties due the licensor for the preceding three (3) months' period. * * *
"8. "The licensor hereby grants, bargains and conveys to the licensee the right and option to pay the licensor the principal sum of Two Hundred Fifty Thousand Dollars ($250,000) at any time on or before March the First, (1st) 1946 as full payment for said Letters Patent of the United States of America, Nos. 2,129,059, 2,079,067, 2,023,136. The licensor agrees to accept said payment of Two Hundred Fifty Thousand Dollars ($250,000.00), over a period of five (5) years in substantially equal installments, reserving the right to designate whether or not said annual payments shall be applicable to the purchase price of the Letters Patent as an entirety, or to specify the year during said period of five (5) years during which the sale of any one or more of the Letters Patent are to be sold to the licensee. Upon payment of said sum of Two Hundred Fifty Thousand Dollars ($250,000.00), in full, to the licensor by the licensee, the licensor agrees to assign to the licensee all his right, title and interest in and to said *100 Letters Patent. "9. "Licensee agrees to make diligent effort to manufacture, sell and market said Heating Units throughout the United States of America. "10. "The licensee acknowledges the validity of said Letters Patent comprehended by this Agreement and agrees to pay royalties in accordance with the provisions of this Agreement so long as the licensee, its successors or assigns, continues in the business of manufacturing and/or selling Heating Units. "11. "In the event of any suit brought against licensee for the infringement of any other patent said suit may be defended by licensee at its option and at its own expense and there shall be deducted from the royalty payable to licensor one-half (1/2) of such sum as may be paid by licensee for expenses, including attorneys' fees and cost of suit, together with such sum as may be paid for the satisfaction of any judgment obtained against it in said suit provided, however, that if licensor shall so request, in writing, licensor shall have the right to assume expense of such suit and any final judgment that may be rendered thereon. "In the event that any Third Party shall infringe upon any patent, comprehended by this Agreement, *101 then licensee may bring such action or actions as it shall deem necessary to prevent said infringement or to collect damages for the same. The expense of said litigation shall be borne by licensee, provided, however, that before bringing any such action or actions, licensee shall advise licensor and if licensor shall elect, in writing, to share in the expense involved in said action or actions, up to Fifty Percent (50%) thereof, then in that event, any damages accruing as the result of said action or actions shall be divided by the licensor and licensee in the same proportion as contribution is made by each of the Parties to the expense involved in said action or actions. "In the event licensee shall refuse to bring such action or actions as the Licensor deems to be necessary to prevent any infringement or collect damages for same, then the licensor shall be entitled to bring such action or actions at his sole expense in which event licensor shall be entitled to all damages that may accrue as the result of such action or actions. * * *
"14. "In the event that licensee shall default in any payment of royalties as herein provided, when the same is due and payable or shall *102 otherwise be in default of the within Agreement and said default shall continue for a period of Ninety (90) days, licensor may, at his election, send such written notice to said licensee. Said notice may be deposited in the United States mails and sent to the business address of said licensee. If said default is not cured within a period of Sixty (60) days thereafter, licensor may at his election, and without any further notice, cancel this contract and the same shall thereupon be terminated. Upon such cancellation, licensee shall cease to manufacture, sell or distribute said Heating Equipment and in the event that licensee shall continue to sell or distribute the same after said cancellation, licensor shall be entitled without notice and without bond to an immediate restraining order in any court of competent jurisdiction. The cancellation of this contract as above provided shall not release licensee from the payment of any royalties due up to the time of said cancellation or accruing thereafter. "15. "This Agreement shall continue, unless terminated as herein provided, for the full term of the patents of the United States Letters Patent for which the licensee is hereby granted *103 or for the full term for which Letters Patent of the United States of America may be granted as to any improvement thereon, whichever of said patents is the last to expire. "16. "In the event at any time after the date of the execution of this agreement a Receiver shall be duly appointed and qualified for Licensee or an Assignment shall be made by Licensee for the Benefit of its creditors or a Petition in Bankruptcy or for reorganization shall be filed on behalf of or against Licensee and upon which Licensee is declared a bankrupt or reorganization is ordered, or if a levy of Execution shall be made against the assets of Licensee or any part thereof and such levy is not, thereupon, or within sixty (60) days thereafter vacated and satisfied by Licensee or a liquidation or dissolution of Licensee is effected either voluntarily or involuntarily or if all or substantially all of licensee's assets are sold except with the consent of the Licensor, then, and in any of such events, this agreement shall thereupon, immediately cease and terminate without any notice whatever from Licensor, it being understood and agreed that this Agreement may not be assigned without consent, in writing, *104 of the Licensor." * * *
One of the assets of the petitioner taken over by Coroaire was a contract with Republic Steel Corporation for the manufacture of the heaters as soon as Government restrictions were removed. Coroaire and Republic entered into a supplemental contract on July 10, 1945. The Government restrictions were removed on August 18, 1945, and manufacture was begun. No payments accrued or were made to the petitioner prior to March 1, 1946, under the contract of March 4, 1944. Coroaire purchased all of the stock of the petitioner on March 1, 1946, and thereafter owned those shares. The petitioner, meanwhile, had disposed of its Coroaire stock. The large amounts paid or credited by Coroaire to the petitioner during the taxable years under the contract of March 4, 1944, constituted substantially all of the income of the petitioner for those years. Those amounts were shown on the books of those corporations as "Royalty Expense" and "Royalty Income." The petitioner carried the patents on its books during the taxable year as its assets. Coroaire did not carry them as assets on its books. [Opinion] The weight of authority supports the petitioner's contention that *105 the contract of March 4, 1944 effected a sale of the patents and the amounts received were purchase price rather than royalties. Parke, Davis & Company, 31 B.T.A. 427; Claude Neon Lights Inc., 35 B.T.A. 424, 427; Edward C. Myers, 6 T.C. 258; Kimble Glass Company, 9 T.C. 183, 190; Carl G. Dreymann, 11 T.C. 153; Halsey W. Taylor, 16 T.C. 376, 384; Kavanagh v. Evans, 188 Fed. (2d) 234; Kronner v. United States, 110 Fed. Supp. 730; George James Nicholson, 3 T.C. 596; U.S. Universal Joints Co., 46 B.T.A. 111; Lamar v. Granger, 99 Fed. Supp. 17; Commissioner v. Hopkinson, 126 Fed. (2d) 406; Allen v. Werner, 190 Fed. (2d) 840; Lynne Gregg, 18 T.C. 291, affd. 203 Fed. (2d) 954. The petitioner held the patents for more than six months and its gain on the sale was longterm capital gain. Decision will be entered under Rule 50.